UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

                       Plaintiff,                 10 Civ. 3335

and                                      OPINION

CAROL ENGLE, VIRGINIA MONCADA,
STACIE EDWARDS-MELCHOR, KIMBERLY
SMITH, and AMY MARTLETT,

            Intervenor-Plaintiffs,

    -against-

STANLEY KATZ and WILLIAM BARNASON,
as Owner and Manager of
144 West 73rd Street, 140 West 7th
Street, and 142 West 75th Street,
New York, New York,

                  Defendants,

and

STEPHEN KATZ,

            Intervenor-Defendant.

------------------------------------------X

**Sweet, D.J.**

Defendant Stanley Katz ("Katz" or the "Defendant") has moved pursuant to Federal Rule of Civil Procedure 56 to dismiss the complaint of the United States (the "United States" or the "Plaintiff") and the complaint of intervenors Carol Engle ("Engle"), Virginia Moncada ("Moncada"), Stacie Edwards-Melchor ("Edwards-Melchor"), Kimberly Smith ("Smith") and Amy Martlett ("Martlett") (collectively, the "Intervenors"). Based on the facts and conclusions set forth below, the motion is denied.

## Prior Proceedings

On April 20, 2010, the United States filed a Complaint against Katz and his then-superintendent, the defendant William Barnason ("Barnason"), alleging violations of the Fair Housing Act. The United States charged Katz and Barnason with subjecting female residents of Katz's properties to severe and repeated acts of sexual harassment, alleging that Barnason routinely solicited sexual favors in exchange for housing benefits, made unwanted verbal and physical sexual advances on female tenants, and conditioned terms, conditions, and

1

privileges of female tenants' tenancy on the granting of sexual favors.  (See Compl. ¶¶ 10, 11, 12, 14, 16.)  Katz is alleged to have been aware of Barnason's conduct, yet refused to take any meaningful steps to address the situation.  (Compl. ¶ 13).  The United States' Complaint seeks monetary damages, civil penalties, punitive damages, and injunctive relief against Defendants.  (Compl. Prayer for Relief).  On July 9, 2010, the Intervenors intervened in the United States' action and filed Fair Housing Act claims specifically on behalf of Engle, Smith, Moncada, Martlett, and Edwards-Melchor.

Katz moved for summary judgment on the ground of res judicata, and his motion was heard on February 9, 2011.

**The Facts**

No Local Rule 56.1 Statement was filed by Katz, but he and his attorney filed affidavits reciting facts relating to prior proceedings in the Housing part of the Civil Court of the City of New York (the "Housing Court").  The Intervenors have filed Intervenor Plaintiffs' Determinations of Undisputed and Disputed Facts.  The United States has submitted a factual

2

statement based on the pleadings and the Housing Court
proceedings.  The facts, derived from these materials, are not
disputed except as noted below.

Defendant Stanley Katz is the owner of three
residential rental properties located at 144 West 73rd Street,
140 West 75th Street, and 142 West 75th Street, New York, New
York (the "Properties").  The Intervenor Plaintiffs each
formerly resided at the Properties.  During that time, Barnason
served as Katz's employee and agent with respect to the
properties.

Katz initiated proceedings in Housing Court against
each of the Intervenor Plaintiffs, initiating each case by a
petition alleging non-payment of rent and seeking eviction.
Specifically, Katz brought summary proceedings against Engle on
March 18, 2009, and again on October 15, 2009; against Smith on
November 25, 2008; against Moncada on July 14, 2009; and against
Martlett and Edwards-Melchor on July 22, 2009.  As a result of
the Housing Court proceedings, Katz obtained judgments of
eviction and for monetary payment against the Intervenor
Plaintiffs with the exception of Martlett and Edwards-Melchor.

3

In the course of their respective Housing Court proceedings, the Intervenor Plaintiffs raised allegations of harassment, and in each case the Housing Court specifically declined to entertain the Intervenor Plaintiffs' claims of harassment.  With respect to Engle and Martlett, Katz opposed litigating their allegations of harassment on the basis that such charges were irrelevant to summary non-payment proceedings. As to Smith and Moncada, the Housing Court specifically reserved their right to raise their respective sexual harassment claims in another forum, recognizing that the Housing Court was not the appropriate forum for such allegations.

With respect to Engle's Housing Court proceedings, she made no mention of the sexual harassment and raised defenses of rent overcharge and breach of warranty of habitability in her pre-written Answer form supplied by the Housing Court.  During the trial held on September 4, 2009 relating to Engle's first eviction proceeding, the Housing Court stated that any evidence she proffered regarding Barnason would be excluded because it was irrelevant.  In the Matter of Stanley Katz v. Carol Engle and Arthur Caine, Index No. 62122/2009, Trial Transcript, at

4

page 59 (finding that Barnason's status as a registered sex
offender is "not really relevant to this particular case.")

On September 4, 2009, the petition was dismissed
without prejudice on the ground that Katz failed to prove an
adequate multiple dwelling registration for the subject
building, in violation of Multiple Dwelling Law § 325.

In October 2009, Katz commenced a second action
against Engle for rent nonpayment.  In the Answer she submitted
pro se, Engle checked off the defenses of illegal rent claim and
breach of warranty of habitability on a pre-written form.  Engle
also handwrote on the Answer form a summary of her claims, which
mentions a hostile housing environment.  At trial on January 4,
2010, Engle again defended on the grounds of rent overcharge and
breach of warranty of habitability.

Engle attempted twice to proffer her own testimony
regarding the inappropriate conduct of Defendants Barnason and
Katz, Katz objected to the testimony, and the Court sustained
those objections.

After the trial a decision was issued in favor of
Katz, evicting Engle from 140 West 75th Street, and ordering her
to pay $24,620 in back rent.  The seven-page decision described
Engle's defenses or counterclaims of rent overcharge and
apartment disrepair amounting to a breach of the warranty of
habitability.

One month after the January 4th trial, Engle pro se
brought an Order to Show Cause (OSC), seeking vacatur of the
decision.  On the pre-written form, Engle checked off one of the
pro-forma defenses listed on the form, which states: "I have
been harassed" but provided no further explanation of that
defense.  Engle also wrote under the Category entitled "Excuse"
the following: "William Barnason sex offender retaliation."

The three post-trial motions brought by Engle were
denied by order of April 27, 2010 on the grounds that reopening
the case and considering additional evidence would not change
the result.  Thereafter, Engle filed an appeal in the Appellate
Term of the First Department based on the denial of Engle's rent
overcharge defense.

6

Katz initiated eviction proceedings against Intervenor Smith in November 2008.  See Notice of Petition and Petition for Non-Payment, Index No. 95519/2008, ("Smith Petition").  Katz sought Smith's eviction from an apartment at 142 West 75th Street, back rent of $4,220, and attorneys' fees and costs.  Id.

With respect to the Housing Court proceedings against Smith, Smith failed to Answer the Petition, and the Court issued a judgment of possession in favor of Katz.  Smith filed a pro se OSC seeking to vacate the April 14th judgment against her and submitted an Affidavit in support of her OSC, which she completed herself by filling out a form prepared by and from the Housing Court.  She wrote her initials next to several defenses listed, including "I have been harassed."  Smith also wrote by hand: "Sexual Harassment, space so small as to be dangerous, injurious and unlawful unconscionable egregious, sexual harassment level 3 sex offend[.]"

With the assistance of an attorney, Smith entered into a Stipulation of Settlement with Katz.  The agreement specifically preserves Smith's right to bring this action against Defendants in ¶ 11 ("Except as provided herein, this

7

agreement is without prejudice to either parties['] right to
seek monetary judgment in any other forum of competent
jurisdiction.").  When Smith breached the settlement agreement
by failing to make timely rental payments, she was evicted and
ordered to pay back rent.

        With respect to the Housing Court proceedings against
Moncada, she also filed an Answer pro se using a form provided
by the Housing Court and selected several defenses, including
improper service, rent overcharge, and a breach of the warranty
of habitability.

        On September 29, 2009, Katz and Moncada entered into a
settlement agreement which set forth a payment schedule for back
rent owed and stayed the eviction so long as Moncada made the
agreed upon payments.  This agreement was "So Ordered" by the
Housing Court.  On March 2, 2010, Moncada moved by OSC to stay
her eviction, claiming that she had made payments per the
September 29th Agreement and was current on her rent.  In her
Affidavit, Moncada also sought to have the September 29th
Agreement "voided due to invalid Stipulation" and proffered an
"Amicus Curiae Brief".  A section of the Brief entitled "Factual

Background" described how Barnason attempted to sexually assault
Moncada and proffered an eye-witness affidavit.  The Court
denied Moncada's motion and declined to consider the Amicus
Curiae Brief because it, inter alia, "argue[d] matters not
raised by respondent."  Moncada moved for reconsideration and
adopted verbatim the Amicus Curiae Brief.

        Katz and Moncada entered into a second agreement,
which set the parameters for Moncada's restoration to the
apartment she was evicted from on June 21, 2010 and specifically
preserved the defenses raised in her Motion for Reconsideration.

        With respect to the Housing Court proceedings against
Martlett and Edwards-Melchor, the initial proceeding was
dismissed without prejudice because of Katz's failure to prove
compliance with the multiple dwelling registration requirements.

        Katz never effected personal service on Edwards-
Melchor because she vacated the apartment she shared with
Martlett in the building at 142 West 75th Street before the
first eviction proceeding commenced and therefore never

9

participated in any proceedings in Housing Court relating to her
tenancy as Katz's tenant.

Martlett, who was represented by counsel, raised
numerous defenses and counterclaims in her Answer to the
Petition for Non-Payment during the first eviction proceeding.
Martlett premised one defense on a claim that Katz breached the
warranty of habitability by allowing Barnason, a known level-
three sex offender, to work as a superintendant at 142 West 75th
Street.  In her Answer, Martlett raised a counterclaim for
emotional distress damages relating to Katz's breach of the
warranty of habitability.

In a subsequent Motion for Summary Judgment, Martlett
contended that Katz violated his duty to provide for her
security and therefore breached the warranty of habitability by
employing Barnason, a known level-three sex offender, who had
unfettered access to her apartment.

On March 24, 2010, the Housing Court denied Martlett's
Motion for Summary Judgment and struck the defenses and
counterclaims in her Answer premised on Barnason and his threat

to her security amounting to a breach of the warranty of
habitability.

At trial, the testimony regarding Barnason's sexual
harassment was barred.

## The Summary Judgment Standard

Summary judgment "should be rendered if the pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."   Fed. R. Civ. P. 56(c).   In considering a
summary judgment motion, the Court must "view the evidence in
the light most favorable to the non-moving party and draw all
reasonable inference in its favor, and may grant summary
judgment only when no reasonable trier of fact could find in
favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77,
79 (2d Cir. 1995) (internal citations and quotation marks
omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986).   Affidavits submitted in
opposition to summary judgment must be based on personal

11

knowledge from a competent source, and "set forth such facts as would be admissible in evidence."   Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).  Hearsay or other evidence that would be inadmissible at trial cannot be credited to defeat a summary judgment motion. See Id. at 219 ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").


**The Motion for Summary Judgment is Denied For**
**Failure to File a Rule 56.1 Statement of Undisputed Facts**


Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Local Rule 56.1 requires a party moving for summary judgment to "annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Loc. Civ. R. 56.1(a) (emphasis omitted). Courts in both the Southern and Eastern Districts of New York,

including this Court, have exercised their discretion under
Local Rule 56.1 to deny defective motions for summary judgment.
See, e.g., Barkley v. Olympia Mortgage Co., Nos. 04 Civ. 875, 05
Civ. 187, 05 Civ. 4386, 05 Civ. 5302, 05 Civ. 5362, 05 Civ.
5679, 2010 WL 3709278, at *14 (E.D.N.Y. Sept. 13, 2010); Felton
v. King of Salsa, LLC, No. 09 Civ. 7918 (RWS), 2010 WL 1789934,
at *2 (S.D.N.Y. May 4, 2010) (citing cases); Searight v. Doherty
Enters., Inc., No. 02 Civ. 604, 2005 WL 2413590, at *1 (E.D.N.Y.
Sept. 29, 2005).


          Katz's failure to identify facts that are not
genuinely disputed and to cite admissible evidence in support
thereof also violates Federal Rule of Civil Procedure 56(c).  As
of December 1, 2010, Rule 56 mandates that a party "asserting
that a fact cannot be or is genuinely disputed must support the
assertion by: (A) citing to particular parts of materials in the
record...; or (B) showing that the materials cited do not
establish the absence or presence of a genuine dispute, or that
the adverse party cannot produce admissible evidence to support
the fact."  Fed. R. Civ. P. 56(c).

13

Katz's affidavits in support of his motion are not sufficient to satisfy his obligations under Rule 56 and Local Rule 56.1.  These affidavits contain argument and subjective characterizations, and thus are unhelpful in "assist[ing] the court in determining which facts are genuinely undisputed." Barkley, 2010 WL 3709278, at *14 (quoting Madison Maidens, Inc. v. Am. Mfrs. Mut. Ins. Co., No. 05 Civ. 4585, 2006 U.S.Dist. LEXIS 39633, at *5 (S.D.N.Y. Jun. 15, 2006)).

Accordingly, as Katz failed to follow Local Rule 56.1's directive to identify all material undisputed facts warranting summary judgment in his favor, his motion is denied.

**The Motion to Dismiss the United States' Complaint**
**on Grounds of Res Judicata is Denied**

It has long been established that litigation involving private individuals does not preclude litigation by the Federal Government.  See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982); City of Richmond v. United States, 422 U.S. 358, 373-74, n.6 (1975).

14

The doctrine of res judicata bars subsequent litigation by a party upon satisfaction of "a three-part test: (1) a final judgment on the merits by a court of competent jurisdiction; (2) the same parties, or their privies, as parties to the first judgment; and (3) the same cause of action in the second proceeding." Colonial Acquisition P'ship v. Colonial at Lynnfield, Inc., 697 F. Supp. 714, 718 (S.D.N.Y. 1988) (citing In re Teltronics Services, Inc., 762 F.2d 185, 190 (2d Cir. 1985)); see also Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). In addition, both federal and state law mandate that the party against whom res judicata is asserted must have had a "full and fair opportunity" to litigate its claims in the prior proceeding. See Locurto v. Giuliani, 447 F.3d 159, 170-71 (2d Cir. 2006); Landau v. LaRossa, Mitchell & Ross, 11 N.Y.3d 8, 14 (2008).

The general rule is that governmental agencies are not bound by private litigation when the agency's action seeks to enforce a federal statute that implicates both public and private interests. See Williamson v. Bethlehem Steel Corp., 468 F.2d 1201, 1203 (2d Cir. 1972) ("For purposes of res judicata or collateral estoppel, the private citizens in this [civil rights]

15

case are not bound by the Attorney General's action in the former case since they neither were parties to it, nor have interests such as to be in privity with the Attorney General.") (internal citations omitted). The statutory duties, responsibilities, and interests of the Department of Justice are broader than the discrete interests of any particular private party and take on added importance with respect to the Government's enforcement of the civil rights laws. See, e.g., United States v. City of Yonkers, 592 F. Supp. 570, 584 (S.D.N.Y. 1984); see also Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 340 (4th Cir. 2007) ("Consistent with this understanding, a number of our sister circuits have held that, in light of the overarching national interest in ensuring the financial stability of pension plans and the inability of private plaintiffs to adequately represent this interest, the Secretary of Labor is not bound by the results reached by private litigants in ERISA suits."); EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1291-92 (11th Cir. 2004) (observing that government agencies have responsibilities far beyond the legal interests of individual plaintiffs, and finding privity not established where EEOC brought Title VII enforcement action charging employer with companywide racial harassment

16

notwithstanding individual plaintiffs' cases against the same
defendant); Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 692
(7th Cir. 1986) (en banc) ("The Government is not barred by the
doctrine of res judicata from maintaining independent actions
asking courts to enforce federal statutes implicating both
public and private interests merely because independent private
litigation has also been commenced or concluded.").

     The Attorney General's enforcement of the Fair Housing
Act seeks to protect both public and private interests.  Indeed,
Congress empowered the Attorney General to seek civil penalties
in court "to vindicate the public interest" and injunctive
relief against individuals who flout the Act.  42 U.S.C. §
3614(d)(1)(C).  Courts also have recognized the United States as
the guardian of public interests under the Fair Housing Act, and
therefore have held that the United States and private litigants
are not in privity with respect to separate actions brought
pursuant to the statute.  See, e.g., Shimkus v. Gersten Cos.,
816 F.2d 1318, 1320 (9th Cir. 1987) (holding private parties not
in privity with the Government in a Fair Housing Act action are
not bound by the terms of a consent order and may file their own
lawsuit against the defendant); United States v. Town of Garner,

17

720 F. Supp. 2d 721, 731 (E.D.N.C. 2010).  In this case, the
United States has exercised its authority under 42 U.S.C §
3614(a) to seek civil penalties against Katz, in addition to
injunctive relief and monetary damages on behalf of the
Intervenor Plaintiffs.

        The United States, in enforcing the Fair Housing Act,
is "not merely a proxy for the victims of discrimination," but
safeguards public interests independent of those of the
Intervenor Plaintiffs.  General Tel. Co. of the Northwest, Inc.
v. EEOC, 446 U.S. 318, 326 (1980) ("Although the EEOC can secure
specific relief, such as... damages... on behalf of
discrimination victims, the agency is guided by 'the overriding
public interest in equal employment opportunity... asserted
through direct Federal enforcement.'") (quoting 118 Cong.Rec.
4941 (1972)).  Katz cannot invoke res judicata to thwart the
United States' deliberate law-enforcement decision to file suit
and protect the public interest.

        Katz has asserted that privity exists if "the claims
in the prior action and the subsequent action are identical, the
same witnesses, facts and legal theories are involved, and the

18

first action did not involve any defense unique to those
parties." Def. Mem. in Supp. at 5. This conflates res
judicata's privity requirement with the requirement that the
prior and instant proceedings involve the same cause of action.
In Zoll v. Ruder Finn, Inc., No. 02 Civ. 3652, 2003 WL 22283830
(S.D.N.Y. Oct. 2, 2003), cited by Katz, there was no dispute
that the defendants in the two proceedings were in privity;
indeed, the two defendants had formalized their status through
an indemnification agreement. Id. at *7. The dispute facing
the court involved assessing the identity of claims between the
two actions. Id. at *8. Similarly, in Sweeper v. Tavera, No.
08 Civ. 6372, 2009 WL 2999702 (S.D.N.Y. Sept. 21, 2009), cited
by Katz, the court expressly found that the interests of the new
parties "were adequately represented in the previous action."
Id. at *5. Privity requires an independent finding that a
party's "'interests were adequately represented by another
vested with the authority of representation.'" Monahan, 214
F.3d at 285 (quoting Alpert's Newspaper Delivery, Inc. v. The
New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989)).


     Permitting landlord-tenant proceedings involving
Intervenor Plaintiffs to preclude the Attorney General from

19

bringing a pattern and practice Fair Housing Act action under
circumstances that "raise[] an issue of general public
importance," 42 U.S.C. § 3614(a), would eviscerate the statutory
scheme and undercut a powerful enforcement mechanism.

The Attorney General's enforcement of the Fair Housing
Act is not "'simply [] a vehicle for conducting litigation on
behalf of private parties.'" EEOC v. Waffle House, Inc., 534
U.S. 279, 288 (2002) (holding that EEOC could seek victim-
specific relief for former employee under the Americans with
Disabilities Act who was barred from bringing a private lawsuit)
(quoting Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355,
368 (1977)).  Thus, "like the EEOC, the Attorney General should
not be precluded from bringing suit on behalf of victims of
discrimination, even if one of those victims could not sustain a
private lawsuit." United States v. Fountain View Apartments,
No. 08 Civ. 891, Dkt. No. 39 (M.D. Fla. Jan. 15, 2009); see EEOC
v. Sidley Austin LLP, 437 F.3d 695, 696 (7th Cir. 2006) (holding
that EEOC could obtain monetary relief on behalf of age
discrimination victims notwithstanding victims' failure to
timely file individual charges, as EEOC's enforcement authority
is not derivative of legal rights of individuals even when

20

seeking to make individuals whole); <u>EEOC v. Bay Ridge Toyota,</u>
<u>Inc.</u>, 327 F. Supp. 2d 167, 173 (E.D.N.Y. 2004) (holding that
federal government can seek injunctive relief under Title VII
notwithstanding individual settlement and release).   Thus,
insofar as Katz contends that the inability of the individual
Intervenor Plaintiffs to maintain individual claims precludes
the United States from pursuing its pattern and practice claim
or recovering individual-based relief against him, the
contention is rejected.


        Finally, the inability of the Housing Court to award
relief otherwise available to the United States independently
precludes application of res judicata.   The doctrine of res
judicata is subject to certain limitations, one of which is that
it will not be applied if the initial forum did not have the
power to award the full measure of relief sought in the later
litigation.   <u>Davidson v. Capuano</u>, 792 F.2d 275, 278 (2d Cir.
1986) (citations omitted); <u>see also</u> <u>Marvel Characters, Inc. v.</u>
<u>Simon</u>, 310 F.3d 280, 287 (2d Cir. 2002) ("[R]es judicata does
not bar subsequent litigation when the court in the prior action
could not have awarded the relief requested in the new
action."); <u>Leather v. Eyck</u>, 180 F.3d 420, 425 (2d Cir. 1999);

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  In this
case, the United States requests remedies which fall outside the
jurisdiction of the Housing Court, including equitable relief
and civil penalties. See Broome Realty Assoc. v. Sek Wing Eng,
703 N.Y.S.2d 360, 361 (1st Dept. 1999) ("Except for proceedings
for the enforcement of housing standards... and applications for
certain provisional remedies..., the New York City Civil Court
may not grant injunctive relief...") (internal citations
omitted); New York City Civil Court Act ("NYCCCA") § 208(b)
(vesting jurisdiction in Civil Court for "any counterclaim for
money only, without regard to amount").  Insofar as the
allegations of the United States (and Intervenor Plaintiffs)
involve events occurring after March 13, 2008, the Housing Court
is powerless to award even monetary damages to the Intervenor
Plaintiffs; rather, civil penalties are awarded to the City of
New York.  See New York City Administrative Code §§ 27-2005, 27-
2110; Aguaiza v. Vantage Properties, LLC, 893 N.Y.S.2d 19 (1st
Dept. 2010).

        Because the United States is not in privity with
private parties, and because of the Housing Court's limited
jurisdiction, Katz's motion to dismiss the complaint is denied.

**The Motion to Dismiss the Intervenor's Complaint is Denied**

The Housing Court is a court of limited jurisdiction, "devoted to actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards." NYCCCA § 110(a). The Housing Court is also vested with authority to consider "any counterclaim for money only, without regard to amount." NYCCCA § 208(b). All such counterclaims are permissive, not mandatory. See, e.g., Classic Automobiles, Inc. v. Oxford Resources, Corp., 612 N.Y.S.2d 32, 33 (1st Dept. 1994).

Housing Court actions for non-payment of rent and possession of property, including those faced by Intervenor Plaintiffs, often proceed by way of "special" or "summary" proceedings. See RPAPL Art. 7; N.Y. C.P.L.R. Art. 4; NYCCCA § 204; 22 New York Code, Rules, and Regulations ("NYCRR") § 210.42. "The summary process is a statutory device designed to achieve simple, expeditious and inexpensive resolution of disputes over the right to possession of real property." Glen 6 Assoc., Inc. v. Dedaj, 770 F. Supp. 225, 226 (S.D.N.Y. 1991).

23

As such, it is "based on petition, N.Y.R.P.A.P.L. § 731, and may proceed without formal pleadings, N.Y.R.P.A.P.L. § 732." Id. at 228. Tenants are afforded only five days to appear and answer. See RPAPL § 732(1). Consistent with the goals of simple, speedy and inexpensive resolution, the rules governing summary proceedings "contain no provision for discovery." Glen 6 Assoc., 770 F. Supp. at 228. Moreover, such proceedings can only be brought and maintained by a party with an actual possessory interest in the property, as defined by RPAPL § 721; third party practice is severely circumscribed. While the Housing Court has power to "join any other person or city department as a party," it can only do so only "in order to effectuate proper housing maintenance standards and to promote the public interest." NYCCCA § 110(d). Specifically with respect to summary proceedings, third party practice has generally been permitted only to add a governmental agency whose mission entails either rent assistance or enforcement of housing maintenance standards. See, e.g., Schanzer v. Vendome, 7 Misc.3d 1018(A), at *5-6 (Civ. Ct. N.Y. Cty. 2005) (citing cases and refusing to dismiss Department of Buildings); Trinity Holy Church v. Frazier, 88 Misc.2d 351, 252 (Civ. Ct. N.Y. Cty. 1976) (Commissioner of Social Services); Manhattan Plaza v. Snyder,

24

107 Misc.2d 470, 474-79 (Civ. Ct. N.Y. Cty. 1980) (New York City
Department of Environmental Protection); Bryant Hoe Corp. v.
Valentine, 83 Misc.2d 5 (Civ. Ct. Bx. Cty. 1975) (New York State
Public Service Commission and Consolidated Edison).

The Second Circuit has recognized that such summary
proceedings do not provide an adequate forum to litigate federal
discrimination claims like the Intervenor Plaintiffs' federal
Fair Housing Act claims.  In Bottini v. Sadore Mgmt. Corp., 764
F.2d 116 (2d Cir. 1985), the Second Circuit held that the
circumscribed jurisdiction of the Housing Court operated to deny
Bottini a full and fair opportunity to adjudicate his Title VII
discrimination claim, and thus he could proceed with his claim
in federal district court.  Id. at 121-22.  In reaching its
holding, the Second Circuit first observed that "city courts are
courts of limited jurisdiction," and that the Housing Court in
particular "plainly lacked jurisdiction to hear a Title VII
employment discrimination claim."  Id. at 121.  Although the
Housing Court had made a finding on Bottini's discrimination
allegations in the course of adjudicating the holdover
proceeding, "[t]he City Court's decision focused primarily on
the merits of the holdover proceeding.  It found merely that

25

Bottini's discharge was lawful, presumably because Bottini had challenged his eviction by claiming that his discharge from employment was unlawful."  Id.  Thus, although the Housing Court had made a finding on the merits of the discrimination, its limited jurisdiction meant that "it was not a competent or appropriate tribunal to hear" the discrimination allegations, and, therefore, "Bottini did not have a full and fair opportunity to litigate his claim" in the Housing Court and was not barred from bringing a Title VII claim in federal court. Id. at 122; see also Locurto, 447 F.3d at 171 ("An opportunity to litigate is neither full nor fair when a litigant is denied discovery, available in the ordinary course, into matters going to the heart of his claim.").  Bottini applies equally to Intervenor Plaintiffs' Fair Housing Act violations.  See Huntington, 844 F.2d at 935; Glover v. Jones, 522 F. Supp. 2d 496, 505-06 (W.D.N.Y. 2007).

Katz cited Okolie v. Paikoff, 589 F. Supp. 2d 204 (E.D.N.Y. 2008), for the proposition that the Housing Court had jurisdiction "to hear and adjudicate the Fair Housing Act claims alleged."  However, in Okolie, the tenant asserted at least six separate claims in Housing Court, only one of which was

26

predicated on the Fair Housing Act.  Id. at 207.  The only claim
dismissed by the district court on res judicata grounds was a
due process claim predicated upon the tenant's deprivation of
the property from which he was evicted in Housing Court
proceedings.  Id. at 214-15.  Indeed, the court evaluated the
merits of the tenant's Fair Housing Act claim in the course of
examining the defendant's motion for summary judgment.  Id. at
220.  The Okolie court never suggested that the Fair Housing Act
claims were barred by the prior proceeding in the Housing Court.
Katz has also cited Turner v. Crawford Square Apartments III,
L.P., 449 F.3d 542 (3d Cir. 2006), and Jamison v. Hart Realty,
No. 04 Civ. 535, 2005 WL 2290309 (S.D. Ohio Sept. 20, 2005).
The plaintiffs in those cases were challenging the propriety of
their evictions and sought to have them reversed.  As the court
noted in Turner, "in both actions [in state and federal court]
the thing being sued for is the same[:]  Turner seeks to remain
in her residence by obtaining injunctive relief that would,
among other things, prevent her eviction."  449 F.3d at 548-49.
See also Jamison, 2005 WL 2290309, at *1.  Here, the United
States and Intervenor Plaintiffs do not challenge the propriety
of the Housing Court judgments or the legality of Intervenor
Plaintiffs' evictions.  Rather, they seek compensation,

27

equitable remedies, civil penalties, and punitive damages for
discrimination and harassment suffered during the Intervenor
Plaintiffs' respective tenancies.   Although Katz's brief
discusses the Rooker-Feldman doctrine, he admits that it does
not apply in this case: "[T]he case at bar falls outside the
reach of Rooker-Feldman."  Def. Mem. in Supp. at 2.   Neither the
United States nor the Intervenor Plaintiffs are requesting this
Court to reconsider the Housing Court's final judgments or the
lawfulness of evictions; therefore, the Rooker-Feldman doctrine
is inapplicable.  See Exxon Mobil Corp. v. Saudi Basic Indus.
Corp., 544 U.S. 280, 291-93 (2005); Babalola v. B.Y. Equities,
Inc., 63 Fed. Appx. 534, 536 (2d Cir. 2003); Reyes v. Fairfield
Properties, 661 F. Supp. 2d 249, 275 (E.D.N.Y. 2009).


        Similarly, while Katz references collateral estoppel,
he does not contend that collateral estoppel bars relitigation
of any particular issue, and the summary nature of the previous
Housing Court non-payment proceedings in issue forecloses
application of that doctrine.   In any event, collateral estoppel
does not pose a bar to the United States' action.  See, e.g.,
United States v. Mendoza, 464 U.S. 154, 158 (1984) (nonmutual
collateral estoppel does not extend to the United States); Pemco

Aeroplex, Inc., 383 F.3d at 1286-90 (finding EEOC not bound by
either res judicata or collateral estoppel by prior judgment in
prior suit where the agency did not present evidence during
trial and had no authority to settle the prior suit, did not
consent to be bound, did not tactically maneuver to avoid
preclusion, and was not in a close relationship with the
litigating party in the prior suit).

In this action, the Intervenor Plaintiffs seek money
damages pursuant to the FHA and the City Law for the illegal
conduct of Defendants, which they describe in their initial
pleading at length.

The Housing Court did not reach a final decision on
the merits regarding any defense or counterclaim premised on
Defendants' sexual harassment of the Intervenor Plaintiffs.  In
Glover, 522 F. Supp. 2d 496, the plaintiff was a former tenant
who sought to recover damages for sexual harassment perpetrated
by the property manager pursuant to the Fair Housing Act
following her eviction.  Id. at 499-502.  Defendants moved for
summary judgment.  Id. at 502.  The landlord maintained that the
plaintiff's claims were barred by res judicata and the property

29

manager contended that collateral estoppel barred the action.
Id. at 504.  The court held that the doctrine of res judicata
did not apply where the prior action involved a judgment of
eviction and a money judgment for back rent rendered by a court
of limited jurisdiction which "was not a competent or
appropriate tribunal to hear [the plaintiff's] allegations of
[sex] discrimination."  Id. at 505 (quoting Bottini, 764 F.2d at
121-22).  The Glover court concluded that since the plaintiff
had not been afforded a full and fair opportunity to litigate
her sexual harassment claims in the prior proceeding, the action
in housing court did not bar her from litigating those claims in
a subsequent federal action.  Id. at 506.


        Even if the Intervenor Plaintiffs had actually sought
redress for sexual harassment during the eviction proceedings
Katz brought against them, as discussed above, the Housing Court
would have been without jurisdiction to hear those claims and
afford the full measure of relief the Intervenor Plaintiffs seek
in this lawsuit.  See Intervenor Complaint at 9 ("plaintiffs
request a judgment granting them compensatory and punitive
damages, costs, attorneys' fees and such other relief as the
Court deems appropriate.").  The Housing Court is a court of

30

limited jurisdiction.  See N.Y.C.C.A. § 110, et seq.;

Prometheus Realty Corp. v. City of New York, 911 N.Y.S.2d 299,

300-01 (1st Dept. 2010).


As noted above, in a summary non-payment proceeding

brought pursuant to the RPAPL, such as the proceedings initiated

by Katz, the Housing Court can afford limited relief.  "[T]he

only relief which can be granted... is an award of possession,

and, if applicable, rent and/or use and occupancy[.]"

Kiryankova v. Brovkina, No. 2002-1410K C, 2003 WL 21246185, at

*1 (App. Term. 2nd & 11th Jud. Dist. Apr. 24, 2003).  Courts

within the Housing Part "lack[] jurisdiction to entertain a

cause for damages."  Id. (citing RPAPL §§ 741, 747; N.Y.S.C.C.A.

§ 110).


Therefore even if the Intervenor Plaintiffs

successfully brought counterclaims for damages relating to the

sexual harassment they suffered at the hands of Defendants

during their tenancies, the Housing Court was without

jurisdiction to afford the Intervenor Plaintiffs the relief they

seek.  As a result, res judicata cannot preclude the Intervenor

Plaintiffs' claims in this lawsuit.  See Rostant v. Swersky, 912

31

N.Y.S.2d 200, 201-02 (1st Dept. 2010) (doctrine of res judicata does not bar plaintiff from seeking treble damages for wrongful eviction in Supreme Court following Housing Court action to restore possession).

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is denied.

It is so ordered.

New York, NY
June 7 , 2011

ROBERT W. SWEET
U.S.D.J.