UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

                  Plaintiff,

and

CAROL ENGLE, VIRGINIA MONCADA, STACIE
EDWARDS-MELCHOR, KIMBERLY SMITH, and
AMY MARTLETT,

                  Intervenor-Plaintiffs,

    -against-


WILLIAM BARNASON and STANLEY KATZ, as
Owner and Manager of 144 West 73rd Street,
140 West 75th Street, and 142 West 75th
Street, New York, New York, and STEPHEN
KATZ,

                  Defendants.

----------------------------------------X

10 Civ. 3335

OPINION

A P P E A R A N C E S:

             Attorneys for Plaintiff

             PREET BHARARA
             United States Attorney for the
             Southern District of New York
             86 Chambers St, 3rd Floor
             New York, NY  10007
             By:  Tara M. LaMorte, Esq.
                  Jeannette A. Vargas, Esq.

Attorney for Defendant Stanley Katz

LAW OFFICE OF DEWEY GOLKIN, ESQ.
55 Liberty Street, Suite 17C
New York, NY  10005
By:  Dewey Golkin, Esq.


Attorney for Defendant Stephen Katz

GOULD & BERG, LLP
222 Bloomingdale Road
White Plains, NY 10605
By:  Jane Bilus Gould, Esq.

**Sweet, D.J.**

Defendants Stanley Katz ("Stanley") and Stephen Katz ("Stephen" and, with Stanley, the "Katz Defendants") have filed a motion in limine seeking to preclude introduction of, or reference to, evidence of Defendant William Barnason's ("Barnason" and, with the Katz Defendants, the "Defendants") status as a Registered Level III sex offender, Barnason's 1986 conviction of the crime of attempted sexual abuse in the first degree, Barnason's conviction in 1987 of the crime of rape in the first degree and sodomy in the first degree and the acts underlying both the 1986 and 1987 convictions. The Katz Defendants have also sought to preclude introduction of evidence related to an alleged 2004 encounter between Barnason and Luz Vasquez ("Vasquez") during which Barnason allegedly groped Vasquez.

The United States of America (the "Government") has filed its own motion in limine to admit evidence related to Barnason's prior sexual assaults pursuant to Fed. R. Evid. 415 and 404(b). The Government seeks to admit evidence that the Katz Defendants had knowledge that Barnason is a Level III sex offender and to use Barnason's prior sex crimes as

1

evidence of his motivation and disposition to commit sexual assaults and his lack of effective inhibitions against acting on such impulses.

Upon the conclusions set forth below, the Plaintiffs are permitted to introduce evidence concerning Barnason's status as a Level III sex offender, but evidence concerning the factual details underlying Barnason's 1986 and 1987 convictions may not be admitted.  Evidence concerning the 2004 encounter between Barnason and Vasquez is admissible.

**Prior Proceedings**

On April 20, 2010, the Government filed a complaint against Barnason and Stanley, seeking monetary damages, civil penalties, punitive damages, and injunctive relief to enforce the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.  The Government's complaint alleged that Barnason, a registered Level III sex offender, was employed by Stanley as superintendent of various apartment buildings and that, during his time as superintendent, female tenants were the victims of repeated sexual harassment by Barnason and

2

Stanley.  The complaint alleged that Barnason, who has access to the tenants' apartments, routinely demanded to have sexual relations with female tenants, and that if his sexual demands were not complied with, Barnason withheld mail delivery and apartment repairs or threatened tenants with eviction. Stanley was alleged to have been aware of Barnason's conduct and refused to take meaningful steps to address the allegations, despite receiving multiple complaints of sexual harassment.  Barnason and Stanley were both alleged to have conditioned rental fees on sexual favors to Barnason.

On July 9, 2010, Carol Engle, Virginia Moncada, Stacie Edwards-Melchor, Kimberly Smith and Amy Martlett (the "Intervenor-Plaintiffs" and, with the Government, the "Plaintiffs") filed their intervenor complaint.  The Intervenor-Plaintiffs are female tenants who resided in the buildings Stanley owned where Barnason worked as the superintendent.  In his answer to the Intervenor-Plaintiffs' complaint, Stanley asserted three counterclaims against the Intervenor-Plaintiffs, including libel, destruction of property and conspiracy to defraud rent.

3

On December 10, 2010, Stanley filed a motion for summary judgment, contending that that prior litigation in the Housing Part of the Civil Court of the City of New York and the doctrine of res judicata precluded the Government's case.  Because res judicata had not been established, the motion was denied on June 2, 2011.

On July 28, 2011, the Government moved to amend its complaint to include Stephen Katz ("Stephen") as a defendant. The amended complaint alleged that Stephen, the son of Stanley, became manager of the apartment buildings in July 2009, and since taking over daily management of the buildings, Stephen subjected female tenants to a hostile environment by repeatedly subjecting them to vulgar and offensive epithets because of their gender.  The Government's motion to amend was granted.

On August 3, 2011, the Intervenor-Plaintiffs filed a motion for judgment on the pleadings regarding Stanley's first and third counterclaims.  On December 9, 2011, Intervenor-Plaintiffs' motion, which was converted to a motion for summary judgment, was denied.

4

On December 16, 2011, both the Government and the Katz Defendants filed the instant motions in limine.  The motions were heard and marked fully submitted on February 1, 2012.

**The Facts**

On September 16, 1986, Barnason, having been indicted for sexual abuse in the first degree, pled guilty to the crime of attempted sexual abuse in the first degree in the County Court of Suffolk County.  As a result of this guilty plea, Barnason was sentenced to and indeterminate sentence of one and one-half to three years imprisonment. One year later, on September 16, 1987, Barnason, having been charged with three counts of rape in the first degree and eight counts of sodomy in the first degree, pled guilty to three counts of rape in the first degree and one count of sodomy in the first degree in the County Court of Suffolk County.  For these crimes, Barnason received an indeterminate sentence of imprisonment of ten to twenty years.

The relevant facts of the present civil case are set forth in detail in the Court's June 2, 2011 opinion

5

denying Stanley's motion for summary judgment.  See <u>United States v. Katz</u>, No. 10 Civ. 3335, 2011 WL 2175787, at *1-4 (S.D.N.Y. June 2, 2011).  Familiarity with those facts is assumed.


**The Applicable Standard**


   **A. Fed. R. Evid. 415**


        In general, "propensity" evidence is inadmissible. See Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").  However, an exception exists for cases involving sexual abuse and child molestation.  See Fed. R. Evid. 413-415; <u>Doe ex rel. Rudy-Glanzer v. Glanzer</u>, 232 F.3d 1258, 1267-68 (9th Cir. 2000) ("Fed. R. Evid. 415 . . . together with its companions Fed. R. Evid. 413 . . . and Fed. R. Evid. 414 . . . was passed to make an exception to Fed. R. Evid. 404(b), which imposed a blanket prohibition on propensity evidence.") (citing <u>U.S. v. LeCompte</u>, 131 F.3d 767, 769 (8th Cir. 1997); <u>U.S. v. Meacham</u>,

115 F.3d 1488, 1491 (10th Cir. 1997)).  Fed. R. Evid. 415

provides, in relevant part:

> In a civil case involving a claim for relief based on a
> party's alleged sexual assault or child molestation, the
> court may admit evidence that the party committed any
> other sexual assault or child molestation.  The evidence
> may be considered as provided in Rules 413 and 414.

Evidence that is offered pursuant to Fed. R. Evid.

415 must still be subjected to the balancing test provided in

Fed. R. Evid. 403, and the Court is obligated to weigh the

probative value of the evidence against the danger of unfair

prejudice and confusion and considerations of undue delay.

See Morris v. Eversley, No. 00 Civ. 8166DC, 2004 WL 856301,

at *2 (S.D.N.Y. Apr. 20, 2004).  While some appellate courts

have imposed judicially crafted rules as to district judges'

consideration of evidence under Fed. R. Evid. 415, the Second

Circuit has instructed district courts to apply Fed. R. Evid.

403 less stringently to avoid having Rule 403 preclude

evidence Congress intended to make admissible.  See United

States v. Larson, 112 F.3d 600, 604 (2d Cir. 1997) ("With

respect to the Rule 403 balancing, however, the

[congressional] sponsors stated that '[t]he presumption is

that the evidence admissible pursuant to these rules [Fed. R.

7

Evid. 413-15] is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice.'"); see also Martinez v. Cui, 608 F.3d 54, 60 (1st Cir. 2010) (recognizing the Second Circuit in Larson as one of the Courts of Appeals that has instructed its district courts to apply a more inclusive standard in its Rule 403 analysis of Rule 415 evidence).  Fed. R. Evid. 415 has been held to be applicable to claims against employers, "without regard to whether the alleged victim or person accused is a party to the litigation." James v. Tilghman, 194 F.R.D. 398, 401 (D. Conn. 1999).

**B. Fed. R. Evid. 404(b)**

Fed. R. Evid. 404(b) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

8

Fed. R. Evid. 404(b). "Evidence of prior criminal conduct is admissible under Federal Rules of Evidence 404(b) and 403 if it is relevant to an issue at trial other than the defendant's character, and if its probative value is not substantially outweighed by the risk of unfair prejudice." United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000) (citing United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999)). Under the "inclusionary" approach to the rule followed by this circuit, such evidence "is admissible for any purpose other than to show a defendant's criminal propensity." United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (citing United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984)).

**Evidence Concerning Barnason's Status As A Level III Sex Offender And The Factual Details Of The Crimes Underlying Barnason's Prior Convictions**

The Government, pursuant to Fed. R. Evid. 415 and Fed. R. Evid. 404(b), seeks to admit evidence concerning Barnason's status as a Level III sex offender and the factual details underlying Barnason's 1986 and 1987 convictions to prove Stanley's intent to violate the Fair Housing Act, rebut the Katz Defendants' argument that the victims fabricated

9

their claims in response to eviction proceedings and
establish Barnason's propensity to commit the types of acts
alleged.  The Defendants seek to preclude the introduction of
this evidence, highlighting the age of the convictions and
contending that the danger of prejudice outweighs the
probative value of this evidence.  The Defendants also state
that the evidence is not admissible under Fed. R. Evid. 415
because the acts alleged do not fall under the definition of
"sexual assault" as provided in the Federal Rules of
Evidence.

## A. Fed. R. Evid. 415 Is Applicable To The Present Action

As an initial step, it must first be determined
whether Fed. R. Evid. 415 is applicable.  As noted above, in
"a civil case involving a claim for relief based on a party's
alleged sexual assault or child molestation, the court may
admit evidence that the party committed any other sexual
assault or child molestation.  The evidence may be considered
as provided in Rules 413 and 414."  Fed. R. Evid. 415.  Fed.
R. Evid. 413(d) defines "sexual assault:"

10

In this rule and Rule 415, "sexual assault" means a
crime under federal law or under state law . . .
involving:

(1)   any conduct prohibited by 18 U.S.C. chapter 109A;
(2)   contact, without consent, between any part of the
      defendant's body - - or an object - - and another
      person's genitals or anus;
(3)   contact, without consent, between the defendant's
      genitals or anus and any part of another person's
      body;
(4)   deriving sexual pleasure or gratification from
      inflicting death, bodily injury, or physical pain
      on another person; or
(5)   an attempt or conspiracy to engage in conduct
      described in subparagraphs (1)-(4).


There is no dispute that Barnason's 1986 and 1987 convictions

fall under Rule 415's definition of "sexual assault or child

molestation."  However, the parties disagree concerning

whether the acts alleged in the present action constitute

"sexual assault."


        According to the Defendants, because the sexual

acts the Government alleges were consensual, they do not

qualify as instances of "sexual assault," thereby rendering

Rule 415 inapplicable.  The Defendants also dispute the

Government's use of Title 18 to establish "sexual assault" in

this case, as all of the sections in Title 18 begin with

language limiting the applicability of the section to those

11

"in the special maritime and territorial jurisdiction of the
United States or in a Federal prison, or in any . . .
facility . . . which persons are held in custody by direction
of . . . any Federal department."  According to the
Defendants, the acts alleged do not fall within Title 18's
jurisdictional scope.

        Although there are multiple instances of sexual
assault alleged, there is at least one instance where the
evidentiary record establishes the conduct at issue to fall
under Rule 413's definition of "sexual assault."  In her
deposition testimony, Intervenor-Plaintiff Kimberly Smith
described an interaction in which Barnason entered Ms.
Smith's apartment, removed her bathrobe and performed oral
sex:

        Q: So, you ran into him in the hallway?
        A: That's correct. . . .
        Q. Okay. And how soon after you both walked into the
        apartment did he take off your robe?
        A. Almost immediately.
        Q. Had you said anything at that point in time?
        A. I don't recall saying anything really, the
        conversation was, it was just happened very quickly,
        very aggressively.  Before I knew it I was on the bed,
        back on the bed and I was afraid of him.  I wanted to
        just say, hey, no, no, get away, but I was afraid of
        him.
        Q. Were you physically afraid of him?

                                12

A. Yes.
Q. Did you say anything during this encounter with him?
A. No.
Q. Approximately how long did the encounter last?
A. Fifteen minutes, 10, 15 minutes.
Q. Did you make any attempt to physically push him away
with either your hands or your legs at that time?
A. Probably, yea, um-hum.  I said no, no, no, no, I
don't, no, no - - uh.
Q. And I remember earlier you said you thought because
you had your period you were safe.  Had you communicated
that to him?
A. I did.
Q. So, you did.  What did you say to him?
A. I said I have my period.
Q. And did he say anything in response?
A. No, he just opened up my robe and, you know.  I said
no, no, no, no, don't, don't, no.


Smith Dep. at 48-50.  Because Intervenor-Plaintiff Smith's

deposition testimony establishes an instance of "contact,

without consent, between any part of the defendant's body - -

or an object - - and another person's genitals or anus," Fed.

R. Evid. 413(d)(2), the evidentiary record includes

sufficient evidence of "sexual assault" so as to make Fed. R.

Evid. 415 applicable to the present action.


###   B. Evidence Of Barnason's Status As A Level III Sex
        Offender Is Admissible


        Evidence of Barnason's status as a Level III sex

offender is admissible to establish both the Katz Defendants'

level of intent, recklessness or negligence and state of mind
as well as Barnason's propensity to commit the alleged acts.
The Plaintiffs seek to hold Stanley both directly and
vicariously liable for violations of the Fair Housing Act,
which prohibits discrimination in housing on the basis of
sex.  See 42 U.S.C. § 3604(b).  To prove direct liability for
Barnason's harassment of his tenants, it must be shown that
Stanley acted with tortious intent, meaning Stanley intended
for Barnason to engage in the discriminatory conduct.  See
Burlington Indus. v. Ellerth, 524 U.S. 742, 758, 118 S.Ct.
2257, 141 L.Ed.2d 663 (1998).  Stanley can also be held
vicariously liable if he "knew or should have known about the
conduct and failed to stop it," Burlington Indus., 524 U.S.
at 759, or, if Barnason's acts were found to be outside of
the scope of his employment, if Stanley acted recklessly or
negligently.  Id. at 757-58.  Especially in light of the fact
that Stanley is alleged to have received complaints from
female tenants, evidence that Stanley had knowledge of
Barnason's criminal history and his status as a Level III sex
offender is relevant to evaluating Stanley's level of intent,
recklessness or negligence.

14

With respect to Stephen, the Plaintiffs intend to prove that Stephen created a hostile housing environment. See Rich v. Lubin, No. 02 Civ. 6786(TPG), 2004 WL 1124662, at *4-5 (S.D.N.Y. May 20, 2004). Stephen's knowledge of Barnason's sex offender status is relevant to determining whether he took appropriate action regarding complaints about Barnason's conduct when he became manager of the apartment buildings in July 2009.

Furthermore, the Plaintiffs intend to seek punitive damages. In a discrimination context, the question of punitive damages generally focuses on a defendant's "malice or reckless indifference to the federally protected rights." Connelly v. Bidermann Indus., Inc., 56 F. Supp. 2d 360, 369 (S.D.N.Y. 1999) (addressing punitive damages in ADA actions). "[T]he terms 'malice' and 'reckless' ultimately focus on the actor's state of mind." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). Stanley can be held vicariously liable for punitive damages in his role as Barnason's employer, if it can be shown, for example, that he "authorized" Barnason's acts, that Barnason "was unfit and [Stanley] was reckless in employing him," or that he "ratified or approved" Barnason's acts. Restatement

15

(Second) of Agency, § 217C, cited with approval in Kolstad,
527 U.S. at 542-43.  Evidence of Barnason's sex offender
status is relevant to the question of punitive damages, as
this evidence is highly probative of the state of mind of the
Katz Defendants.

With respect to Barnason, evidence concerning the
fact that he is a Level III sex offender can be used to
establish his propensity to commit the alleged acts.  As
noted above, Fed. R. Evid. 415 is applicable to the present
action and, while Rule 404(b) generally prohibits the
introduction of prior crimes to establish a defendant's
propensity to commit an alleged act, Rule 415 creates an
exception to this Rule 404(b) prohibition.  See Glanzer, 232
F.3d at 1267-68; LeCompte, 131 F.3d at 769; Meacham, 115 F.3d
at 1491; see also Larson, 112 F.3d at 604.

In addition to being relevant with respect to the
Katz Defendants' state of mind and Barnason's propensity,
evidence of Barnason's sex offender status is also relevant
to the credibility of potential witnesses.  Courts have
previously held that evidence of prior sex crimes can be
admitted to bolster or undermine witnesses' credibility.

16

See, e.g., United States v. McGuire, 627 F.3d 622, 627 (7th
Cir. 2010) (allowing testimony of other minors, besides the
one whom the defendant was charged with molesting, noting
that "[t]he evidence was material because the defense was
that [the victim in the charged offense] was a liar.");
United States v. Batton, 602 F.3d 1191, 1198 (10th Cir. 2010)
("Batton [the defendant] claimed at trial that he did none of
the acts of which J.D. [the victim] accused him,  making the
1995 conviction a crucial piece of evidence to help the jury
determine the validity of J.D.'s accusations.").

        Notwithstanding Fed. R. Evid. 415, a court must
still perform Rule 403's balancing test and evaluate whether
the probative value of the evidence outweighs the danger of
unfair prejudice.  See Morris, 2004 WL 856301, at *2.  As
noted above, the Second Circuit applied a presumption that
the probative value of evidence of past sexual assaults is
not outweighed by the risk of unfair prejudice.  See United
States v. Davis, 624 F.3d 508, 512 (2d Cir. 2010); Larson,
112 F.3d at 604.  Here, the likelihood that admission of the
Katz Defendants' knowledge of Barnason's status as a Level
III sex offender will result in unfair prejudice against them
is minimal, as the evidence concerns Barnason's previous

17

conduct and does not involve the Katz Defendants.  With
respect to Barnason, the danger of undue prejudice is limited
by the fact that only his status as a Level III sex offender
may be admitted, not the factual details underlying his
previous convictions.  The fact that Barnason's convictions
occurred in the mid-1980s does not diminish the probative
value of the evidence, as Congress explicitly rejected
imposing any time limit on prior sex offense evidence.  See
Larson, 112 F.3d at 605 ("Neither Rule 403 nor any analogous
Rule provides any bright-line rule as to how old is too
old."); see also 140 Cong. Rec. S12990 ("No time limit is
imposed on the uncharged offenses for which evidence may be
admitted; as a practical matter, evidence of other sex
offenses by the defendant is often probative and properly
admitted, notwithstanding substantial lapses of time in
relation to the charged offense or offenses.").  As such,
Fed. R. Evid. 403 provides no basis upon which to exclude
introduction of Barnason's status as a Level III sex
offender.

Because Fed. R. Evid. 415 applies and because the
probative value of the evidence outweighs the danger of

18

prejudice, evidence of Barnason's status as a Level III sex offender is admissible.

### C. Evidence Concerning The Underlying Details Of Barnason's Previous Crimes Are Inadmissible

As noted above, although the Plaintiffs state that Barnason committed acts of sexual assault, the Defendants contend that the alleged sexual activity between Barnason and the building tenants was consensual.  The Government contends that Congress passed Rule 415 to address precisely this type of situation and that the circumstances underlying Barnason's past sexual crimes are admissible under Rule 415 to prove that Barnason sexually assaulted the victims in this case. The legislative history of Fed. R. Evid. 415 can serve to reveal Congress' intent:

> Another ground for consideration is probability.  For example, consider a rape case in which the defense attacks the victim's assertion that she did not consent, or represents that the whole incident was made up by the victim.  If there is conclusive evidence that the defendant has previously engaged in similar acts – such as a prior conviction of the defendant for rape – then the defense's claim of consent or fabrication would normally amount to a contention that the victim made up a false charge of rape against a person who just happened to be a rapist.  The inherent improbability of such a coincidence gives similar crimes evidence a high

19

degree of probative value, and supports its admission in
such a case.

137 Cong. Rec. S4925, 4928 (daily ed. Apr. 24, 1991); see
also 137 Cong. Rec. S3191, 3240 (daily ed. Mar. 13, 1991);
Cleveland v. KFC Nat. Mgmt. Co., 948 F. Supp. 62, 64-65 (N.D.
Ga. 1996) (citing Rule 415's legislative history).

    The Government contends that there are substantial
similarities between the circumstances surrounding Barnason's
previous sex crimes and the sexual assaults in the present
action that render the nature of Barnason's previous assaults
probative of whether he committed the instant offenses.
These similarities include the fact that in both sets of
cases Barnason's victims were his neighbors, that Barnason's
victims were vulnerable, that Barnason was intoxicated when
he engaged in the alleged conduct and that Barnason claims
his victims, both current and former, are lying.  The
Government contends that the circumstances Barnason's past
sexual crimes should be admitted under Rule 415 because the
similarities between Barnason's previous crimes and the
current accusations establish Barnason's propensity to commit
the crimes alleged here.

20

However, a review of the Division of Parole's Comments/Supervision Plan from 2000 reveals differences between the conduct alleged in this case and the conduct underlying Barnason's 1986 and 1987 convictions.  Barnason's crimes in the 1980s involved sexual acts against children. In one case, Barnason fondled the buttocks of young girl who visited his home to trade stickers with Barnason's daughter. In the second case, one victim described how she and three friends were playing in the bedroom of Barnason's daughter. Barnason entered and began playing "doctor" with the children, instructing them to remove their pants.  When they did, Barnason removed his pants, touched the children's genitals and requested that they touch him.  The Division of Parole report also states that Barnason vaginally and anally penetrated each of the children.

There is a dearth of case law in this Circuit concerning how district courts should apply Fed. R. Evid. 415, cf. Glanzer, 232 F.3d at 1268 (providing a three-step inquiry in applying Fed. R. Evid. 415 and factors to consider in applying Rule 403's analysis to Rule 415 evidence), and it is unclear how the dissimilarities between Barnason's prior

21

crimes and the conduct alleged here affect Rule 415's
applicability.  However, it is "universal among the courts of
appeals [] that nothing in Rule 415 removes evidence
admissible under that rule from Rule 403 scrutiny."
Martinez, 608 F.3d at 60.  As noted above, the Second Circuit
has held that Rule 403 should be applied less rigorously in
evaluating Rule 415 evidence to avoid Rule 403 from
precluding evidence Congress intended to make admissible.
See Larson, 112 F.3d at 604; see also Martinez, 608 F.3d at
60 (citing Larson and noting that some circuits "have
instructed district courts to apply Rule 403 less
stringently, at least in some cases, to avoid having Rule 403
swallow evidence Congress clearly intended to make
admissible.").

Recently, the Second Circuit evaluated whether a
district court appropriately applied Rule 403 to evidence of
a defendant's previous sex crimes.  See United States v.
Davis, 624 F.3d 508 (2d Cir. 2010).  In Davis, the Government
moved to have certain of the defendant's prior convictions
admitted into evidence, namely a 1991 conviction for sodomy
by forcible compulsion and 2007 convictions for numerous
offenses including sexual assault, rape and kidnapping.  Id.

22

at 511.   The district court applied Fed. R. Evid. 414, which

like Fed. R. Evid. 415 addresses the admissibility of prior

sex crimes, and granted the motion in part and denied it in

part.   The Court admitted the 1991 conviction, but encouraged

a stipulation that redacted the fact that the victim was the

defendant's daughter, and the Court precluded the 2007

conviction because "the details of that offense conduct are

so likely to inflame the jury" that "its potential for

prejudice, undue prejudice, is very high."   Id.   The Second

Circuit, acknowledging its decision in Larson that prior

convictions' prejudicial value would normally not be

outweighed by the risk of prejudice, endorsed the district

judge's approach:


> The calibration necessary to distinguish 'highly'
> prejudicial from 'unfairly' prejudicial will often be
> difficult to determine.   In this case, the District
> Judge demonstrated his concern for the issue by
> excluding the 2007 convictions and encouraging the
> stipulation that redacted from the record the explosive
> fact that the victim of the 1991 conviction was the
> Defendant's daughter.


Id. at 512.

23

In comparing the present action to the <u>Davis</u> case, the facts underlying Barnason's 1986 and 1987 convictions, including the fact that his daughter was involved in each offense, are similarly "explosive."  Additionally, the probative value of the facts underlying Barnason's prior convictions is limited, as the prior crimes involved the sexual molestation of children Barnason met through his daughter, while the present crimes involve Barnason's alleged sexual assault of women he met at his place of business.  Furthermore, the acts alleged in the instant action are dissimilar from Barnason's previous crimes.  The limited probative value of the evidence, when balanced against the high potential for undue prejudice, renders the factual details underlying Barnason's 1986 and 1987 convictions inadmissible under Fed. R. Evid. 403.

### D. Evidence Concerning Barnason's Level III Sex Offender Status Is Also Admissible Pursuant To Rule 404(b)

In addition to Fed. R. Evid. 415, the Government seeks to admit Barnason's sex offender status pursuant to Fed. R. Evid. 404(b).  Rule 404(b) permits introduction of "[e]vidence of a crime, wrong, or other act" so long as such

24

evidence is not offered "to prove a person's character in
order to show that on a particular occasion the person acted
in accordance with the character." Fed. R. Evid. 404(b).
Such evidence is admissible to prove "motive, opportunity,
intent, preparation, plan, knowledge, identity, absence of
mistake, or lack of accident." Id. As noted above, under
the Second Circuit's "inclusionary" approach, evidence of
other crimes, wrongs, or acts is admissible for "any purpose
other than to show a defendant's criminal propensity."
Roldan-Zapata, 916 F.2d at 804.

        The Plaintiffs' seek to introduce evidence of
Barnason's Level III sex offender status against the Katz
Defendants for purposes contemplated within Rule 404(b).
With respect to Stanley, the Government seeks to admit this
evidence to demonstrate that his intent, recklessness or
negligence in hiring a Level III sex offender to be the
superintendent of his buildings. With respect to both Katz
Defendants, the Government is seeking to introduce this
evidence to establish the Katz Defendants' intent,
recklessness or negligence when they allegedly refused to
take adequate steps to protect female tenants,
notwithstanding their knowledge of complaints and Barnason's

sex offender status. Because this evidence is being admitted for purposes of establishing the Katz Defendants' intent and knowledge, Barnason's status as a Level III sex offender is admissible against the Katz Defendants under Rule 404(b).

With respect to Barnason, Fed. R. Evid. 415 and its legislative history establish Congress' intent to allow evidence of a defendant's prior sexual crimes to be admissible notwithstanding Rule 404(b)'s general prohibition on "propensity" evidence. Accordingly, Rule 404(b) is not applicable to the Plaintiffs' efforts to admit evidence of Barnason's status as a Level III sex offender against Barnason.

**Evidence Concerning Barnason's Alleged Assault Of Vasquez Is Admissible**

During discovery, the Government deposed Vasquez, who resided in one of the apartment buildings at issue in this case for a period of approximately four years. Vasquez testified that, on one occasion in August 2004, Barnason, while under the influence of alcohol, groped Vasquez' breasts and attempted to push her into her apartment. Vasquez

26

testified that she kicked Barnason in the groin and entered her apartment without Barnason following her.  After the incident, Vasquez allegedly complained to Stanley and threatened to call the police.  Barnason later showed up intoxicated at Vasquez' place of employment, where he allegedly continued to physically harass Vasquez.

The Katz Defendants seek to preclude evidence related to this August 2004 encounter, contending that Fed. R. Evid. 415 does not apply because the conduct alleged in the present action does not constitute "sexual assault" as defined in Fed. R. Evid. 413(d).  The Katz Defendants further state that the probative value of this evidence is outweighed by the danger of unfair prejudice, as the evidence regarding the 2004 incident is unnecessary considering that the Plaintiffs can call other witnesses to establish their case.

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  42 U.S.C. § 3604(b).  The Government, in

27

its amended complaint, has alleged that "since at least 2004,
and possibly earlier, through approximately March 23, 2010,
Defendants Stanley Katz and Barnason have subjected numerous
female tenants living in the Properties to severe, unwelcome
and pervasive sexual harassment," which included "unwanted
verbal sexual advances," "unwanted sexual touching,"
"unwanted sexual language," "conditioning the terms,
conditions, and privileges of women's tenancy on the granting
of sexual favors," "attempting to enter dwellings while drunk
or inebriated, demanding sex," "granting and denying tangible
housing benefits based on sex," and "taking adverse action
against female tenants when they refused or objected to
Barnason's sexual advances."  Am. Compl. ¶ 20.   The
Government has stated its intention to prove its case by
introducing evidence at trial that, inter alia, in late
August 2004, Barnason physically attacked Vasquez while he
was intoxicated, groped her inappropriately, attempted to
push her into her apartment and called her offensive names.
The Government also intends to establish that Stanley had
notice of the 2004 incident yet took no action to remove
Barnason from his position.

28

Notwithstanding the Katz Defendants'
characterization of the August 2004 incident as a prior act,
the Government's amended complaint establishes that
Barnason's 2004 encounter with Vasquez is part of the
Plaintiffs' present action brought under the Fair Housing
Act.  Barnason's alleged conduct toward Vasquez falls within
the ambit of the amended complaint, as the encounter provides
evidence of a female tenant who was sexually harassed by
Barnason when he subjected her to unwanted sexual advances,
unwanted sexual touching, unwanted sexual language and
attempted to enter her apartment while intoxicated.  The
evidence is probative of the Government's Fair Housing Act
claims, and the probative value of this evidence is not
outweighed by any danger of unfair prejudice.  Accordingly,
evidence concerning the alleged 2004 encounter between
Barnason and Vasquez is admissible.

**Conclusion**

Based on the facts and conclusions set forth above,
the Plaintiffs are permitted to introduce evidence concerning
Barnason's status as a Level III sex offender, but evidence
concerning the factual details underlying Barnason's 1986 and

29

1987 convictions may not be admitted.  Evidence concerning
the 2004 encounter between Barnason and Vasquez is
admissible.


It is so ordered.



New York, NY
February 9 , 2012


ROBERT W. SWEET
U.S.D.J.

30